Lessee of EDWARD and JANE PENNEL *vs.* PETER WEYANT, HENRY MOOR and others, tenants in possession.

The probate of a will cannot be controverted *collaterally.*

But the probate of a will in another state, of lands in this state, may be controverted here in an action of ejectment for the land.

The lex loci governs as to the will and mode of probate.

In a court of law a party cannot controvert the legal effect of his deed of record.

He may deny its execution or delivery.

No deed without *delivery* ; and a deed even *acknowledged* and *recorded,* but never delivered nor intended to be, will not divest the title.

The office copy of a deed in another state is such a *record* as may and *must* be au-
thenticated under the act of congress, to make it evidence.

In the case of a will executed abroad, the attestation must show that the requisitions
of our law were complied with, or this must be proved.

The court will not leave it to the jury to infer a proper execution, unless it appear that
the parties were acting in reference to our law.

THIS was an action of ejectment by the lessors of the plaintiff, as
two of the heirs at law of Isaac Jones, to recover certain lands in
Brandywine hundred, of which, as the plaintiff contended, he died
*seized* and *intestate.* It was admitted that the defendants were in
possession; that plaintiffs were two of the heirs at law of Isaac Jones,
who died on the 29th of September, 1829, leaving two sons, Isaac H.
Jones and John C. Jones; and four grand-children, Isaac J. Rush,
Edward Pennel, James Pennel and Sarah Ann Hartley, the issue of
a daughter, Deborah Jones. Isaac Jones died in possession of the
land, and was supposed to have died *intestate;* letters of administra-
tion were duly granted on his estate, to John C. Jones and Isaac Jones,
in December, 1830. A will was afterwards produced, dated 15th
January, 1807, which was admitted to probate in the city of Phila-
delphia.

The defendants claimed under this will. They also set up as a
bar to the plaintiff's suit, a deed for the land in question, from Isaac
Jones to David Bush, William Larkin and William Keay, *in trust*
for the children of Isaac H. Jones, dated 18th January, 1826, and
duly recorded.

An office copy of the will from the register's office in Philadelphia,
was offered in evidence, and being objected to, the court for the pre-
sent directed it to be read, subject to the objection.

The will was dated January 15th 1807; stated the testator Isaac
Jones, to be a resident of the city of Philadelphia; was in writing;
signed and sealed by the testator writing his own name, and attested
by three witnesses. The attestation was in this form—" Signed, seal-
ed, published and declared by the testator, Isaac Jones, for and as
his last will and testament in the presence of us, R. Whitehead, Ja-
cob Sullender, Benjamin Brown." The will was admitted to probate
on the 1st of June, 1830, on proof of the *death* and *handwriting* of R.
Whitehead and Benjamin Brown, two of the three subscribing wit-
nesses. There was no sentence or decree allowing the will in terms;
but letters of administration, d. b. n. c. t. a., were granted to Weyant
and Moor, the defendants in this case.

The record itself was certified according to our act of assembly;
(*Digest,* 556.)

The plaintiffs now called a witness for the purpose of impeaching

the will; which was objected to on the ground that a will admitted to probate in another state and certified according to our act, could not be controverted in an action of ejectment, nor before any other tribunal than the register, judge, or court of probate, having either original or appellate jurisdiction.

This question was argued at length by *J. A. Bayard* for defendant; and by *Wales, Rogers,* and *W. H. Rogers,* for plaintiff.

*Per Curiam.*

J. M. CLAYTON, *Chief Justice :*—The question before us is, whether the heir at law can go into testimony to controvert the will of Isaac Jones.   We may admit that a probate before our register is conclusive whenever it comes collaterally in question in any other proceeding.   The admitting a will to probate is a decree or sentence; *it is* by a judicial officer, having exclusive jurisdiction; and, upon general principles, the court holds his sentence to be right until it is appealed from or reversed in the regular mode.   But this is not a case where any register of our state has ever had this will sub judice.   It is not doubted that the lex loci is to govern.   *Coppin* vs. *Coppin,* 2 *P. Wms.* 291; *Story's Conf. Laws,* 398, *sec.* 474.   These lands lie in Delaware. If the courts of Pennsylvania could make a decision setting up a will as to lands here, without any opportunity of reviewing that judgment, it would be violating a great general principle; and, for comity, surrendering the substantial requirements of our law.

We hold, therefore, as at present advised—1st. That the probate or sentence of our register of a will of lands in Delaware, is conclusive until appealed from and reversed by due course of law.   2d. That as to immoveable property, the law of the place where it is situated governs, both as to the capacity of the testator and the requisites to the will's validity.   3d. That the validity of a will of lands situate in Delaware, made by a non-resident and not proved here, may be tried in ejectment, if the will be given in evidence by one claiming under it in an action by the heir.   4th. And where such will of lands here has been proved abroad, the foreign probate is not conclusive here, but may be controverted.   Another question will arise, as to whether this probate does in fact justify the requirements of our act as to the real estate; and whether the third witness, if alive, should not have been called.

We doubt whether the mode suggested by defendants' counsel, of petitioning our register to review a foreign probate, would be a lawful mode of bringing the matter sub judice here.   The clause in the act authorizing a copy to be filed in the office here, seems to be merely for the purpose of making an office copy of such record evidence. We know not how the foreign probate is to be reviewed here, unless

we allow the will to be questioned in the trial of an ejectment. It may not be the best mode; may be liable to the objection stated, of bringing the matter frequently into litigation; but it is better than to establish any principle which would prevent parties interested under a will from testing it by the rules of law existing in the place where the land lies.

You may go on and controvert this will.

*Jonas P. Fairlamb,* the scrivener who prepared the trust deed from Isaac Jones to Bush, Larkin and Keay, was called with a view of proving that said deed had been executed for a special purpose, and not to have the effect which it was now set up for. It was objected that it was not competent for them in a court of law, to controvert the legal effect of this deed. To which it was replied that the deed was never *delivered ;* the trustees never accepted the trust; the deed itself was found among the papers and came from the custody of the grantor; that it never had the force of a deed, and it could be shown that Isaac Jones never meant that it should have.

*Court.*—In a court of law, and between parties claiming under or against this deed, which has been *acknowledged* and *recorded,* it is not allowable to controvert its legal effect. You may deny its execution either as to signing or delivery, or show the mode of delivery.

*Fairlamb.*—The deed was signed by Isaac Jones, in my office. The grantees were not there, nor any one else. It was not delivered to them, but I was directed to have it recorded and return it to Isaac Jones, the grantor, which I did. I put the usual question to him, whether he signed, sealed and delivered the instrument as his deed, to which he assented. It was not delivered to me for any one, only left with me for the purpose of placing it on record, and returning it to him.

The plaintiffs now offered in evidence, a copy, certified by the recorder of deeds for the city and county of Philadelphia under his seal of office, of a deed from Isaac Jones to Thomas R. Tunis; and a re-conveyance by Tunis to Jones. It was objected to because it was not authenticated under the act of congress.

The plaintiffs then proved the *seal* by a witness, and contended that the copy so proved was evidence; that the act of congress prescribing a mode of authenticating records did not exclude *other* modes of authentication.

*Mr. Bayard* said if it were necessary he should contend that this was a paper which could not be made evidence by certifying it even according to the act of congress. It was not a record such as is contemplated by the act. No copy of a deed can be evidence in our

courts, unless on account of the loss of the original, or unless the same be made evidence by our laws.

*Court.*—Such a paper as this is made evidence by the act of congress, if certified according to the forms of that act. The proof now offered does not make known to us that this is the proper officer entitled to certify the paper, and that the mode of certificate is in due form. The certificate of the judge furnishes this evidence.

The plaintiff now called an attorney at law, from Philadelphia, who proved the recorder's *handwriting* and *seal*, and that he is the *proper officer* to certify such a record.

*The Court.*—The constitution of the United States authorizes congress, by general laws, to prescribe the *mode of proving* records, and their effect. By the act of 1804, congress has fixed the manner of authenticating this record, which is an office paper, and not a judicial record. As that mode has been prescribed, we think it should be followed, and that it is the only mode; but we will listen to any respectable authority of any state court holding the contrary.

Judge HARRINGTON remarked, that the office copy of a deed made and recorded in another state, acquired the character of evidence here *only* under the act of congress. It is a private paper; admitted to record by the laws of another state; not entitled to record here; and an office copy of it there is evidence only because *their* act of assembly has made it so. No principle of *comity* would give the same character to it here; for, though we respect judicial decisions on grounds of mutual comity, this has never been thought to extend to private papers, though placed on record by authority of law. An office copy of a foreign deed, independently of the act of congress, is no more evidence in this state than a private copy; which, being secondary, would not be admissible unless the original is shown to be *lost*. But the act of 27th March, 1804, made under the constitutional provision, does embrace records of this kind, and gives them the force of evidence every where, when certified according to its forms. He thought it necessary, therefore, to distinguish between these *quasi* records, provided for by the act of 1804, and *judicial records ;* and to restrict the rejection of the paper now offered to records of the former kind ; so as to exclude the conclusion that judicial records may not be proved in any other mode than that prescribed by the act of congress. Such a record might be proved by sworn copy and by other modes. 1 *Stark. Ev.* 164, 190; 9 *Cranch,* 122.

*W. H. Rogers,* for plaintiff, to the jury contended, that even if Jones' will were valid in Pennsylvania it would not pass lands in Delaware,

as the *attestation* did not show, and there was no other proof given, that the requisites of our statute of wills were complied with. That this could not now be supplied otherwise than by calling Sullender, the third witness, who was not proved to be dead, and must be presumed to be still living. Neither could supplementary evidence be now offered in proof of the execution; as it came here as a *record*, and must stand or fall as such, by whatever appears on its face.

The defendants replied, that this was a matter to be left to the jury who, even under the statute frauds, were permitted to presume a proper execution on proof of the witness' handwriting though the attestation was not full. 2 *Strange*, 1109; *Willes*, 1, *Brice* vs. *Smith*. It was also argued that as the avowed object of the will was to pass lands in Delaware, the parties would be presumed to have acted in reference to the laws of this state, as to the mode of execution.

*By the Court.*

J. M. CLAYTON, *Chief Justice :*—There is nothing to leave to the jury, from which to infer an execution of the will according to the laws of this state. We do not say that the case of an execution similar to this could not be accompanied by circumstances which would induce the court to leave it to a jury to infer an execution in proper form, as in the case of an execution abroad between citizens of Delaware, before Delaware witnesses, under the known direction of a Delaware lawyer; which would all be circumstances from which a jury might reasonably infer an execution according to our law. But here is a Pennsylvania testator, scrivener and witnesses; they were conveying Pennsylvania property as well as Delaware property; personal as well as real; and there is no reason to infer or presume without proof, that in this case the parties looked beyond their own law, and looked to and observed the requisites of our law. It is a known inference and a reasonable one, that the parties to a paper of a solemn character are to be presumed to know the law, but this presumption extends only to the law of the place of their residence where they are acting. Now by the law of Pennsylvania, there was no necessity that the witnesses should subscribe the will in the *presence* of the testator, which our law makes necessary. The attestation does not state that it was so signed, and the proof is simply of the handwriting of two of the three subscribing witnesses. This mode of attestation does not satisfy the requirements of our act, nor is there any reasonable ground in this particular case to infer that the parties had any reference to the Delaware law at the execution. It is true the authorities read show that in England the courts leave it to a jury to infer if they choose, a proper execution, though the attestation be not full; but this is where the execution is by English parties, under the

direction of English conveyancers, the former of whom are presumed to act in reference to the law, and the latter to know the law. We would do the same with a will executed in Delaware, on proof of the handwriting of witnesses, even to a defective attestation ; and we do not say that the case cannot arise, where we would leave a foreign will to the jury.   On the present case, we see nothing which would justify the jury to find that these witnesses did sign in the *presence* of the testator, and from which to infer a proper execution of this will.

*Campbell.*—The decision of the question as to the will, abridges the argument, and confines it to a question arising on the deed of trust.   We contend that the deed of trust to Bush et al, conveyed the estate to the trustees for the cestui que trust, which could not be affected by the refusal of the trustees to act, and that the delivery was good.   12 *Eng. Com. Law. Rep.* 351, *Garnon's lessee* vs. *Knight; Prec. in Ch'y.* 211, 235.

*Bayard.*—The placing a deed on record puts it out of the grantor's power to deny the delivery.   The record estops him.   A deed cannot be recorded without delivery ; if the grantor voluntarily puts it on record he admits the delivery, and is estopped from denying it afterwards.   I admit that a fraudulent placing a deed on record against the grantor's will would not have such effect ; but I take the case before us of a voluntary recording by the grantor himself.   1 *Salk.* 280 ; 2 *Vernon*; 5 *Barn & Cres.* 651.   The effect of placing a deed here on record, is to make a copy of it evidence, and that with any proof of delivery.   The recording of a deed *cannot* take place by the act of the party, without delivery.   The fact of recording is proof of delivery.

*Ingersoll*, contra.—The *delivery* of the deed cannot be without the intention of the grantor to *deliver*, and it is for the jury to say whether Isaac Jones ever *intended* to deliver this deed.   Unless the jury say that, this deed can never stand as a defence to protect these defendants from the recovery which the plaintiffs have already been decided by the court to be entitled to, notwithstanding the *will.*   Recording is not delivery.   It is only evidence of delivery, which I agree it is prima facie ; but it may be consistent with an intention not to deliver, except under certain circumstances, which may never happen ; and, if this be conclusively proved to rebut the prima facie evidence of delivery furnished by the recording, it is no deed.   The formal execution of a deed before witnesses is evidence of delivery prima facie, but which may be rebutted by proof of contrary intent; the recording is but another circumstance which may be also rebutted. There is no delivery known to the law but an *actual* delivery ; it may

be of two kinds, absolute or as an escrow, yet in either case an *actual delivery;* this may be *proved* in various modes, but every form of proof may be rebutted by other evidence. Even the actual handing of the paper might be rebutted and shown not to amount to a delivery.

J. M. CLAYTON, *Chief Justice,* charged the jury:—

The case has been reduced to a single question, whether the deed from Jones to Bush et al, was *delivered* so as to take effect as Jones' deed.

On this question we charge as follows, leaving the jury to apply the principles to the facts as they shall find them; and if they have difficulty in applying the principles, they may find the facts in writing in the form of a special verdict, to which the court will apply the law.

Where a party to any instrument seals it and declares in the presence of a witness, that he delivers it as his deed, acknowledges and records it, but keeps it in his own possession; *and there is nothing to qualify* the delivery but the keeping the deed in the hands of the executing party, nothing to show he did not intend it to operate immediately; it is a valid and effectual deed, and delivery to the party who is to take by it, or to any person for his use, is not essential.

But if *at the time* of the formal execution and delivery, the grantor directed it to be recorded and returned to him with an intention then avowed to set it up as a deed, and actually to deliver it, only in some future contingency, which never occurs; and there never has been an actual delivery, but the paper remained in the custody of the grantor till his death; there the delivery is not sufficient to make it a valid deed. A mere formal declaration of delivery may always be explained by the intention of the grantor as avowed at the time of execution. The acknowledgement of a deed before a judge is not *conclusive* evidence of the delivery; nor is the fact of recording a deed *conclusive* evidence of the delivery. In such cases, the question of delivery may still be controverted before a jury. We concur on this subject with the Supreme Court of Massachusetts in *Maynard* vs. *Maynard,* 10 *Mass. Rep.* 458. Whether a creditor of the real grantees in a recorded deed might not have taken it in execution for debt, in consequence of the credit given by putting such an apparent title upon record, need not now be determined. *Comyn,* 531; *Strange,* 1109; *Willes Rep.* 1; 12 *Eng. Com. Law. Rep.* 251.

The jury rendered a verdict for the plaintiff, when there arose a question as to the mode of entering the verdict.

*The Court* said, the practice had been to enter the verdict gene-

rally for the plaintiff; or that the defendants were guilty of the trespass and ejectment complained of; and then the plaintiff issued his habere facias at his peril; or, if they could agree on the share, they might enter the verdict specially. The demise was general, and the lessors of plaintiff were entitled to only a part of the lands, as tenants in common with the other grand-children of Isaac Jones.

The verdict was taken thus:—" We find that the defendants are guilty of the trespass and ejectment within laid to their charge, in manner and form as within complained against them, as to *one sixth part* of the lands, tenements and premises; and assess damages at six cents, and six cents costs, besides the costs expended."